

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
XXXIIXXXXXIIXXOXXX
ATTORNEY GENERAL

Honorable M. F. Kieke
County Attorney
Lee County
Giddings, Texas

Dear Sir:

Opinion No. O-2502
Re: Are the inhabitants of an
incorporated city permitted
to vote in a stock law elec-
tion under Article 6954, R.
C.S., such city being includ-
ed within the description of
the subdivision? And related
question.

Your letter of recent date requesting a legal opinion from this
department states that in a stock law election under Article 6954,
Revised Civil Statutes of Texas, an incorporated city is included with-
in the description of the sub-division in which the election is to be
held. You ask if the inhabitants of such city are permitted to vote in
the election, and if not, would the city nevertheless be affected by and
included within such sub-division.

Article 6954 provides in part as follows:

"Upon the written petition of one hundred (100) free-
holders of any of the following counties: . . . Lee. . . .
or upon the petition of fifty (50) freeholders of any such
subdivision of a county as may be described in the petition,
and defined by the Commissioners Court of any of the above
named counties, Commissioners Court of said County shall
order an election to be held in such County or such sub-
division of a county as may be described in the petition
and defined by the Commissioners Court on the day named in
the order for the purpose of enabling the freeholders of
such county or subdivision of a county as may be described
in the petition and defined by the Commissioners Court to
determine whether horses, mules, jacks, jennets, and cattle
shall be permitted to run at large in such county or such
sub-division of a county as may be described in the petition
and defined by the Commissioners Court."

In the case of Conner vs. Skinner, et al, 156 SW 567 (Court of
Civil Appeals), it is said:

".....It is sufficient answer to say the record nowhere discloses that any general stock law is in force in Eastland County, and therefore, if the statutes cited were applicable to that county, some of which are not, yet there is nothing, as indicated, to show that the people of that county have ever availed themselves of the privilege of adopting the provisions of the general stock law so as to put the same in force in the town of Eastland "..(Emphasis ours)

In considering the question as to whether an incorporated city or town may be embraced within a designated derritory within which the stock laws would apply, the Court of Criminal Appeals in the case of Neuvar vs. State, 163 SW 58, declared:

"None of the statutory enactments providing for the adoption by vote of either of said stock laws excluded the incorporated towns or cities from being embraced within the territory designated within which such stock law should apply. .... So that we think it is clear that the petition for the election in a certain part of Lavaca County designated by metes and bounds in the petition, the orders of the commissioners' court and in the adoption of the act, were perfectly legal and valid, although it embraced three incorporated towns within its boundaries; and that the freeholders within said incorporated town could vote at such election the same as a freeholder voter in any part of the territory....."

To the same effect is the case of Bishop vs. State, 167 SW 363, from which we quote as follows:

"Said election district, as No. 6, therefore had embraced the city of Weimer. Weimer, long before then, had been incorporated under the general incorporating act, authorizing towns of one thousand inhabitants or over to incorporate.... As such corporation, it had just such power and authority... to regulate and prohibit stock running at large as were given by said statutes to such incorporated towns. It had passed no ordinances, and had none regulating or prohibiting stock running at large.... He contends, first, that Weimer could not be included in the territory for such election because it was incorporated.... This court in Neuvar vs. State, 163 SW 58, expressly decided appellant's first ground against him. We have no doubt of the correctness of that decision, and that Weimer could be, as it was, embraced in said district eight...."

The rule announced in these cases by the Court of Criminal Appeals of Texas was recognized and its correctness re-affirmed in the

case of Lambert, et al vs. Scurlock, et al, (Court of Civil Appeals) 285 SW 679, wherein the court said:

"Appellant.....asserts that the election was void because in a sub-division of Jefferson County which included Port Arthur, an incorporated city, which had theretofore adopted the stock law, and hence could not be lawfully included in said election. ..... We do not deem it necessary to go into a lengthy discussion of these cases, but will say that they were in effect overruled in Neuvar vs. State, 72 Tex. Crim. Rep. 410; 163 SW 58. In that case a stock law election was held valid, although it included within the bounds of the sub-division in which the election was held three incorporated towns. In Bishop vs. State,.....the question .....was again considered, and it was again held that such town could be included in such sub-division....."

And in English vs. State, 292 SW 229, it was again declared by the Court of Criminal Appeals:

"This court is called upon to determine whether, upon a proper construction of the statute quoted, it is legal to include in the district wherein the election was ordered the territory embraced within the incorporated city of Port Arthur..... It is true that the people within a city are not dependent upon the election, but the city might, by ordinance, prohibit stock from running at large within the corporate limits. This was known to the Legislature, however, when the statute was enacted, without providing that in defining a district the commissioners' court should not include the territory embraced in any incorporated city. .....Nothing in the language used can, in the opinion of the writer, imply any intention or direction that the people of the incorporated cities within the counties might not participate, and this as above state, though such cities might, by ordinances, protect themselves against stock running at large within their boundaries. The language used with reference to the entire county, and the manifest intent that the election should be one in which all freeholders, whether urban or suburban, could participate, is illustrative of the legislative intent in its use of practically the same language with reference to sub-divisions of the county. The precedents are not harmonious, but somewhat confusing....."

We have reviewed the foregoing cases because, as pointed out by the court in the English case, the precedents are not harmonious. For example, in the case of Cowand vs. State, 202 SW 961, it was held on

the authority of the case of Reuter vs. State, 67 SW 505, that a local
option election could not be held within the city of Dallas because by
the act of the 30th Legislature in granting a special charter to the
city of Dallas, the city was given the power to regulate and prohibit
the running at large of stock. This could not be invaded by the at-
tempt of the commissioners' court of Dallas county to include the city
of Dallas within the district.

In the Reuter case, referred to above, the Court of Criminal
Appeals had held that the Legislature by special act having given
authority to the city of Dallas to regulate the running at large of
stock, the city was supreme, and an election ordered by the Commis-
sioners' court of the county to prohibit stock running at large in the
county would not affect the city of Dallas. The court reasoned that
the general law applicable to every county was at all times subject to
change and modification "by special laws acting upon the same subject
in particular counties or special localities, though such change will
not affect the operation of general law, except in those localities
which are to be taken out of the general rule." The special act of the
Legislature giving to the city of Dallas the authority to regulate the
matter precluded the application of the general stock law statutes.

The opinions in both the Cowand and Reuter cases were written
by Judge Davidson. In the Neuvar case, discussed above, the same court,
through Judge Prendergast, declared:

"We do not regard the case of Reuter vs. State, 43 Tex.
Crim. Rep. 572, 67 SW 505, as applicable to the questions
presented in this case."

Of course these cases may be distinguished upon the proposition
that they involved an act of the Legislature which granted a special
charter to the city, giving to the city the express and specific power
to regulate the matter also regulated by the general stock law statute.
Yet, as pointed out by Judge Morrow in the English case, the cases are
"somewhat confusing."

We were orally advised by you that the incorporated city of
Lexington, which does not operate under an existing charter as was
involved in the Cowand and Reuter cases, is the subject city of your
request, and that it has not adopted a stock law. Clearly, therefore,
your question would be controlled by the authority of the cases which
hold that an incorporated city or town may be legally embraced within
the territory designated within which a stock law would apply, and that
the freeholders within the incorporated city or town may vote at the
stock law election.

Accordingly, you are advised that the freeholders within the
incorporated city of Lexington, the subject city of your request, should

Honorable M. F. Kieke, Page 5          0-2502


be permitted to vote in a stock law election under Article 6954, such city being embraced within the description of the sub-division of the county within which the stock law would apply. It thereupon becomes unnecessary for us to discuss your second question.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By  s/Zollie C. Steakley
Zollie C. Steakley
Assistant

ZCS:AW:wc

APPROVED AUG. 2, 1940
s/Grover Sellers

FIRST ASSISTANT ATTORNEY GENERAL


Approved Opinion Committee By BWB Chairman